Good morning, Your Honors, and may it please the Court. My name is Phil Telfian, and along with my co-counsel, Marissa Hatton, I represent the plaintiffs. I intend to reserve three minutes for rebuttal, and I will watch my time. Thank you. This case is about a private probation company wrongfully threatening indigent probationers with jail in order to squeeze money and profits out of them in violation of both state and federal law. The district court below granted summary judgment to Leaders in Community Alternatives, the private probation company I will refer to as LCA. The district court's ruling of summary judgment should be reversed by this court for three reasons. First, there are numerous disputes of material facts. Second, the amounts demanded by LCA were wrongful because they were not tied to ability to pay. And third, the methods used by LCA were wrongful because falsely threatening jail in order to pay a payment is wrongful. But your clients knew that LCA itself could not send them to jail, right? Your Honor, there's some dispute over, essentially, yes, Your Honor, but we don't think that that fact is material, and there is testimony from our clients that they effectively viewed these individuals as their probation officers. It would be similar to if a probation officer said, I'll send you to jail if you don't give me money. Now, even if you know you're before a judge, that threat is wrongful. In fact, in United States' Villalobos, a 2014 decision from this court, the facts are almost perfectly on point. Mr. Villalobos threatened a victim with misuse of the criminal process, threatened false testimony if that individual didn't pay money. This court held that the method was wrongful because it was threatening misuse of the criminal process. That doesn't necessarily make it not wrongful. The court could imagine a police officer grabbing someone and saying, hey, if you don't give me a thousand bucks, I'll have you arrested. Well, that individual might still know that a judge would have to determine probable cause. Maybe even the case would be thrown out. But just the mere threat of a wrongful use of the criminal process has been held by this court to be wrongful. If, in fact, the person should know from the documents that you do not have power to do anything for him, it has to go to a judge. Why do you stretch it, fear to stretch it, that the mere statement, even though it's an accurate statement, is sufficient for your cause? Well, there's actually more than just the mere statement, Your Indigence. State statutes dictate a course of action that must be followed. Under California Penal Code 1208.2H, if someone is unable to pay probation fees, the probation entity, in this case, LCA, must refer the matter to a neutral judge to determine ability to pay. So, Your Honor, I'm sorry, Your Honor? Yes, that's right. So, if you're on to your question where you say, if, in fact, our clients owed money, it's really not a fact of whether they owed money once they claimed indigence, which both of our clients said repeatedly they couldn't afford. So the amount that was owed should have been referred to a neutral judge. It never was. LCA simply said, pay us or go to jail. No, no. When did they say specifically, pay us or you go to jail? So, according to, for example, record page 112, Mr. Wilson says that he raised his indigency every time he talked to her, her being his case manager. And she responded, she told me if I didn't make a payment, I was going to go to jail. Those were her exact words. So, in other words, you have Mr. Wilson saying, I can't pay this. I can't afford. And the case manager saying, then you're going to go to jail unless you can pay us. That's the threat that's wrongful. The amount is wrongful because under California law, once someone claims indigence, they have a right to go before a state judge, a neutral arbitrator who determines ability to pay. The amount is in dispute. But even if the amount was not disputed, even if there was no dispute, which there is in this case, there's a dispute about the amounts, but even if there was no dispute, it's still wrongful to threaten a misuse of the criminal process in order to collect that amount. I want to change the focus just for a moment, if I may. Judge Alsop responded to a motion from LCA. I'm constraining it as a 12B6 motion. I don't know what else to call it. But in that, the judge dismissed Edwards and Brooks on the basis that they didn't state a claim, and yet he retained the other two people in the case with essentially the same allegations, the same pleadings. Was that a proper action on behalf of the judge? No, that's one of the matters that were challenging in our briefing, and it was completely improper, mainly because he did not allow leave to amend for a first amended complaint. The order was very confusing. He sustained the RICO claim, and the quote is on record page 26. He says, plaintiff's RICO claim is upheld. It was ambiguous. We thought all four of our clients had a RICO claim. The other claims were dismissed. To dismiss two of the four plaintiffs on the RICO claim without specifying was error. We think this court should dismiss. But even more fundamentally, once the judge clarified that error, him now saying, well, I meant to dismiss two and keep two, we moved to amend to beef up the allegations based on discovery we had received, and the judge did not allow a first amended complaint for Mr. Edwards and Mr. Brooks, even though discovery had already been taken of them, even though identical discovery had been taken of all four of our clients. He threw two of our clients out of the case. Did you append the exhibits that show that they would say something greater than the other two fellows had said or equal to it? Did you append that to the proposed amended complaint? The proposed amended complaint in our motion... No, we did not, Your Honor. In the motion for to amend, we outlined our bases. In the amended complaint itself, we redlined the new allegations, including quotes from Mr. Edwards and Mr. Brooks. And we said in the motion, if we are given leave, of course, we will attach all the necessary exhibits. But they would have been exactly the same exhibits as previously referenced in other court filings. And they would basically say the same thing as the other two fellows, that he threatened with jail when they said they couldn't pay? Exactly. It seemed like Judge Allison was concerned about magic words of threatened with jail, which in our view, obviously, is a... Let me ask you this. Suppose they were wrongfully dismissed because they had the same general repo claim and they would say they were wrongfully dismissed because they didn't have the facts with regard to the predicate act of extortion. Now, if they said exactly the same thing as the other two fellows, then if the court is right about summary judgment, then how is that going to And that's why I'd like to comment on the summary judgment ruling, the disputes of facts. Your Honor is exactly right. If even if all four are reinstated, summary judgment settles, would settle it for all four. The disputes of facts are key. If I could turn to that, Your Honor. So, yeah, your view is they were wrongly, wrongfully dismissed because they have the same repo cause of action. Exactly. But they're not alleging anything really different from the other two. So summary judgment, if it's correct, kind of ends it. Would apply to all four. Now on the disputes of material fact, I'm not going to debate materiality. I'll just pull from LCA's own statement of facts in its brief in this court. On page 14 of their statement of facts, for example, LCA claims as a fact, quote, threats, coercion or violence are directly opposite of LCA training. This is material. It's in their brief. But there's testimony on ER 93 from case manager Maria Vargas that, quote, threatening participants was an unwritten policy at LCA at ER 427. Case manager of a Brera says, quote, Our standard way of operating with the scare people into making payments and threatening in the if they wouldn't from ER 81. It came from supervisors. We were forcing and scaring them from LCS own statement of facts. On page 15, they say, quote, a participant's daily monitoring fees are reduced, adjusted based on income. But case manager of that Brera says at ER 1 50, I was not taught to reduce payments. Instead, I was told to keep pushing for the full payment and terminate people from the program if they didn't pay. Case manager Lisa Amber says at ER 4 30 if LCA thought it could get more money arbitrarily out of a picker client, they would add additional fees accordingly. We were never trained to consider ability to pay when setting those fees, and there was never any consideration of ability to pay. These are employees of LCA case managers who are giving testimony directly contrary to statements in the statement of facts of LCS own brief. I'm not trying to cherry pick here. Virtually their entire statement of facts is disputed. I'm just picking the most egregious examples. LCA claims on page 35 of their brief, quote, There was no evidence that Jackson or Wilson were ever threatened. But at ER 1 38, Jackson says LCA started kicking in the threats at his enrollment, which were, quote, Pay me or go to jail. Now, whether LCA accepts this testimony is true is not before this court, merely that there is a genuine dispute of facts that LCS own brief both before this court and in the district court below are directly disputed. So the material facts are plentiful. So let me ask you this. I get your point about the summary judgment. But you do agree, I believe, from what you said to Judge Rustani that if you're if the two folks are added back in as Edward and Burke and if the summary judgment was properly granted, they would also be defeated. Is that correct? Yes, they would be. All right. So technically, what do we do? Um, if we agree with you that Judge Alsop was mistaken in cutting those two loose, what do we do? Send it back with giving you a leave to amend? What do we do? If the court I think summary judgment is a threshold question. And as you can tell from my argument, I strongly believe that summary judgment was wrong, both on the disputes of facts and on the legal standard. But if this court finds summary judgment was properly granted, it essentially would not have to necessarily reach the dismissal or the leave to amend question unless it wanted to give some some instruction to Judge Alsop. I've talked about the disputes of fact, but I do want to talk briefly about why Judge Alsop's legal standard is just flat wrong and needs to be reversed on the summary judgment question. He said on page six of the record that because plaintiffs both agreed to pay fees as part of their agreed programs, the defendant was entitled to payments from the plaintiffs regardless of the amount. This holding violates U.S. Villalobos' holding. From this court in 2014, the means ends test. For extortion, the judge has to look at both the means, the method used, and the ends, the amount demanded. We have testimony that both the method and the amounts were wrongful in this case. That's information a jury should decide. There's a dispute of fact over whether the method and the means were used. LCA repeatedly said, pay me or go to jail according to testimony from our clients and employees. That's testimony that shows wrongful means. Even LCA in its own brief admits it would be unacceptable for a case manager to threaten a participant with jail for failure to pay. The fact that we have testimony that that happened means that summary judgment has to be reversed, and I will reserve my time for rebuttal. Very well. All right. Let's hear from Ms. Colman, please. Good morning. May it please the court. Both the motion to dismiss ruling and the summary judgment ruling were proper. The end denial of the plaintiff's motion to amend the complaint. In terms of the motion to dismiss, plaintiff's counsel, appellant's counsel, neglects to mention that Edwards and Brooks submitted declarations to the complaint. And in those declarations under penalty of perjury, there's no mention of them being threatened, unlike Jackson and Wilson's allegations. So all that goes to the predicate act of extortion. Didn't they claim throughout this whole complaint that they were injured by the way the RICO enterprise functioned? That's how I understood the complaint. So they have the same cause of action as the other two fellows, or that the RICO enterprise was run in a way that caused them to have to, you know, to be subjected to this system where more money was required from them than should have been and treated in this. They're claiming a general, general harms from the RICO enterprise. The other two fellows were what was used for the predicate act of extortion. Do these two fellows have to be injured by the predicate act of extortion to have a cause of action related to the functioning of the RICO enterprise? That's my question. Well, the RICO enterprise was essentially dismantled by the dismissal of the county and all of the other defendants other than LCA. So if that may not be true, just because the county was dismissed, doesn't mean that they weren't a party that caused the enterprise, the other participant that caused the enterprise to collapse. I mean, it's one thing to dismiss the case because there's no more RICO enterprise claim. But to dismiss two people because they weren't involved in the particular predicate act, I don't see why that gets them dismissed. Can you explain that to me? Can you hear her? They, I'm sorry, I was thinking. If they weren't threatened, and they owed the money that they were asked for, it's unclear how they would be part of the RICO enterprise without being subject to that particularized harm. I mean, maybe that goes back to standing if there's no harm from those individuals. Appellant's Counsel, in arguing that the summary judgment was improperly granted, relies on many facts that were adduced during the class action process in which they attempted to certify the class. So the sites that he provided from different case managers saying that there was a pattern of threat, for example, those were not the named plaintiffs' case managers. And since the class action was denied, in looking at the summary judgment ruling, which would render any decision on the motion to dismiss harmless error, we don't look at allegations from case managers that weren't the case managers of these particular plaintiffs. It's no longer relevant if someone in Solano County or another county or even Alameda County that wasn't the case manager of these particular plaintiffs threatened. If they weren't subject to threats, then summary judgment was proper. If they weren't harmed by the things that are alleged in the complaint, then there's an issue of standing. But I didn't understand that that's what the district court was doing. I didn't understand that the judge was making a ruling that these two people did not allege sufficient harm from the RICO enterprise. I did not read his opinion that way. Is that how you read it? That's how I read it in totality. It goes through standing and then it talks about the threats and different things. So that's how I would urge the panel to read it, that there was no standing on behalf of these individuals. Appellant's counsel argued that this case is on all fours with U.S. versus Villa-Lobos. That case is very different because in that case, the rabbi of the paid people who immigrated as if they had jobs and then they were expected to repay the money to him. So it was a fraudulent work scheme. In this case, people choose to go on electronic monitoring instead of being incarcerated. It is a privilege for them to be on electronic monitoring. And instead of being in jail, they choose that. They sign agreements to pay the fees for the electronic monitoring. The two plaintiffs that were left at the summary judgment stage both had alcohol monitoring and GPS monitoring devices on them. And both of them paid less than the default $25.50 a day. Both of them had reduced fees that they were paying for the electronic monitoring. And they acknowledged that their depositions that they knew if they didn't pay those fees, that they would be reported to the court. The condition of payment is one of the conditions of probation or monitoring, similar to not drinking alcohol, not associating with a you know, reporting to your job, reporting to your probation officer, all of which could report could result in a report to the court, at which point the court determines if they remand the person into custody, they adjust the payment schedule or the conditions of probation. And they acknowledge that that was a process of If this case is overturned, if Judge Alsup's decision on summary judgment is overturned, then we're saying that people, for example, who have credit cards, who failed to make their That's a good question. I really, if indeed, that people were saying, the And then they're threatened with jail, the fact that they might owe some money or more money or less money, it seems to me doesn't doesn't matter what they're saying is I'm threat. I said, I'm can't pay. I'm indigent. And they say we're going to jail. I think the judge's reasoning really seemed flawed. I'm more impressed with the fact that if they all knew that they can't go to jail until they go to a judge, then where's where's the where's where's the effective threat? But the question is, if the person, you know, if the person is saying you will go to jail, and are they saying, we control the system, we are going to make sure you go to jail, we control the system. Isn't that a threat? It wasn't established that that was being said that say, but isn't that the meaning of it? If they know there's a process, but this person says you don't pay, you're going to go to jail, aren't they effectively saying we control the system, you will go to jail. But if you look at the facts that were induced during discovery, and that are cited in the summary judgment motion, that's simply not the case. There's less than 2% of the people that were remanded to custody after being reported for failure to pay under both the penal code. Well, I guess the judges did their job. But that doesn't mean that the threat wasn't made. Neither. Neither Wilson nor Jackson complained that they were indigent and couldn't pay and their files don't reflect that. But they both did submit evidence that resulted in a reduced payment. Neither one of them were paying the maximum payment. So But it sounds like you're saying that this is just like any other condition of supervised deletes. And that when someone violates one of those conditions, whether it's the probation officer or these folks, LCA, they go to the court and say, this condition was violated, we think x and y ought to happen. And then the court decides that that's essentially your position, isn't that? Exactly. It's identical to any other other conditions of probation. And when they go to the company, in this case, LCA, but there are other companies out there that they had alternatives to select. They sign an agreement that they're going to pay the fees. And that's the same. And they're told in court that that's one of the conditions of being on the program is that they have to pay the monitoring fees. It's the same as it as not associating with gangs or the curfew or other conditions, what have you. If we hold that that can't be carried out without without these companies being considered to conduct racketeering, then, I mean, it's, it's very similar to like a credit card, and agreeing to pay the fee and be able to try to collect in some way without. And bill collectors can certainly say you're going to be reported to credit agencies, you're going to have these consequences occur. It's, it's similar in that respect. As I understand it, one of the differences between Villalobos and this case is that even if LCA blocked the plaintiffs from lowering their daily rate, they could present evidence to the court about their ability to pay. And the court can only incarcerate them. And I'm quoting now, if the person willfully fails to pay fees to the provider of electronic home detention services, and that's quoting California Penal Code 1203.016B4. And since they did not meet that requirement, isn't there a question of whether an essential element of the RICO claim is undercut? Exactly, Your Honor, they can't be incarcerated unless there's a willful failure to pay. So when the report is done saying that they failed to pay, that's one of the things considered whether it was a willful failure to pay, whether they just can't pay, and then the court can adjust the payments if needed once they go to the court. In the Villalobos case, they weren't entitled to the money, so it was a wrongful monetary sum in addition to potentially threat. So it's really not on point with this case. Yes, isn't there some evidence in the record from former employees that said they that they described how they use threats of jail to coerce proleagues to pay higher fees than they could afford? Isn't that in the record? Appellant's counsel presented some evidence of that in the record in an attempt to get the class certified. That is not directly from the plaintiff's case managers, however. So, well, I mean, if the employees are describing that this enterprise use threats to coerce proleagues to pay higher fees, then why isn't that? Why are you saying that's not doesn't raise the issue of fact? Because it's because it came up at the time they were looking for class certification. Because it dealt with people on probation that had other case managers. So it may be relevant to the point that this company functions this way. And these people are saying they were trying to squeeze out of us more money than we could pay by threatening us. Why isn't that a disputed fact? Your Honor, it's not disputed. Let me put it this way. Why isn't that, why is that not a material disputed fact? Because it doesn't pertain to these individual plaintiffs, Your Honor. And second, first of all, the training materials and all the evidence, all the written policies, it's undisputed that they did not train their employees to do that. There are employees who say that they don't comply with those policies. So you've got some factual statements this way and that way. Right, Your Honor. Are you trying to tell me, so it sounds like a disputed issue of fact. Are you trying to tell me it's not material? It's not material to these plaintiffs, Your Honor. Some of those people are from different counties and never interacted with these plaintiffs. So it's, it may be material if the issue is the training in Solano County for different plaintiffs that are no longer an issue. Well, okay. If the testimony goes to the general operation of the whole company, then these four people are affected by it, right? How do you get it down to one county? Was there something about the testimony that said this only happens there? Some of those people worked in different counties, Your Honor, and different locations. And at the evidentiary hearing, Judge Alsup noted that the people who presented testimony of that type were disgruntled former employees. The plaintiffs or the appellant's counsel found people that had been fired from the job that had an ax to grind with the company that said things like that, which were contrary to the written training and to the testimony of people who were still working at LCA. The fact is, these particular plaintiffs all had the fees reduced. Okay. There wasn't very much in the summary judgment order. Are you telling me that all of the judges' reasoning is really in connection with the lack of certification of the class? The summary judgment decision is, like, tiny. But you said there's something in back of it? Well, it's sort of all cumulative because we start with the motion to dismiss, and then at the classification stage, the court held an evidentiary hearing, and he told the plaintiffs' counsel, put on your best evidence that there's a pattern and practice of these threats, and they presented some testimony, and the judge made factual findings and credibility findings. So really, that underlays the decision on summary judgment when he makes these findings, that it just doesn't… Can the district judge make credibility determinations? Isn't that for the trier of the fact, in this case, the jury? Your Honor, he was the trier of fact at the evidentiary hearing. He'd heard testimony, and he made factual findings, and he's entitled to do so at an evidentiary hearing stage. Understood. That's for the certification. Yes, but that understanding preceded the summary judgment motion and underlaid some of the decisions in that. Let me ask, do either of my colleagues have additional questions for Ms. Coleman? I do not. I do not. Okay. I'm fine, thanks. Okay. So, Mr. Kellogg-Dunn, you have a few minutes of rebuttal time. Turn off your… There you go. Thank you, Your Honors. I might ask for a couple extra minutes just to get into some of the thorny issues because I know Ms. Coleman went over by several minutes. Well, we'll see. Go ahead. Thank you, Your Honors. Well, I'll try to make as many points as I can. First, opposing counsel said that payment of fees is, quote, identical to any other condition of probation. That is just flatly wrong under California law. Under California Penal Code 1208.2g, I'll quote, no person shall be removed from any electronic monitoring program because of an inability to pay all or a portion of the program supervision fees. Payment is completely unique as a condition of probation. If you cannot afford to pay, you are not in violation. It is simply not a violation of probation to be unable to pay. But with respect, didn't the judge find that, in effect, LCA couldn't send anybody to jail just like any other condition? The issue would have to go before the judge, and the penal code section you referenced would be brought to the judge's We don't think Judge Elsup made that finding clearly, but to your question and Judge Rastani's questions earlier, the existence of an intermediary can be relevant to whether a payment has been made wrongfully under either the Hobbs Act or California law. Just imagine if Child Protective Services was visiting a home, and the Child Protective Services agent said to a parent, give me $1,000 or I'm going to have your kids taken away. Well, that parent may very well know that a report has to be written, a judge has to hear the evidence, and maybe the kids won't be taken away. But that threat would still be wrongful because it is threatening a wrongful use of the judicial process. The testimony in this case is literally, quote, pay me or go to jail. That's according to Mr. Wilson. According to Mr. Jackson, if you don't pay, you go to jail. That's the threat. This is a question of fact for the jury, whether someone might reasonably fear they would be sent to jail when a person of authority threatens jail for nonpayments. Another point I wanted to address was opposing counsel's points about these case managers. First of all, Yvette Barrera, who we quoted here today, is cited on supplemental ER 150 as a case manager for Mr. Jackson. So some of the quotes are relevant. But more to Judge Rastani's point, we see a pervasive pattern of threats being made, case managers saying this was our standard operating procedure. It came directly from management. This testimony is, of course, relevant under RICO because RICO requires us to show a pattern of illegal activity, in this case, threats of jail. So the testimony from case managers that it was routine, that they were commonly threatening people with jail is relevant. And our clients say this exact same thing, that they individually were threatened with jail. And the last thing I want to- Why don't you wrap up here, give me a minute more. Yes, Judge Smith, I appreciate that. I just wanted to clarify your earlier question about a process. Of course, for all the reasons we've stated, we think the first action from this court is to reverse summary judgment, both based on the diffusive fact and on the wrongfulness question about the amounts owed, which we have facts on, and the method used, which we have facts on. Then, after summary judgment is reversed, we think either the original dismissal order could be reversed, that would reinstate Edwards and Brooks, or more cleanly, simply allow Edwards and Brooks to amend. That would satisfy Judge Alsup, it would bring the complaint to a complete form. So after reversing on summary judgment, either reverse the dismissal or allow the amendment, which would bring all four plaintiffs into the case. Judge Rastanis, I may have confused you with that analysis. That's okay. Do either of my colleagues have additional questions? No, I'm fine, thanks. All right, well, thank you both, counsel, for your argument. We appreciate it. This is an interesting case. Case disargued is submitted.
judges: Wallace, M. Smith, Restani